UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ERIC BROWNELL<br><br>        Plaintiffs,<br><br>    v.<br><br>BIOMET, INC.;<br>BIOMET ORTHOPEDICS, LLC;<br>BIOMET U.S. RECONSTRUCTION, LLC;<br>BIOMET MANUFACTURING LLC;<br>and ZIMMER BIOMET HOLDINGS, INC.<br><br>        Defendants. | MDL NO. 2391<br><br>Civil Case No. 3:18-cv-196<br><br>JUDGE: ROBERT L. MILLER, JR<br><br>**COMPLAINT AND DEMAND**<br><br>**FOR JURY TRIAL** |

Plaintiff ERIC BROWNELL alleges, on information and belief against BIOMET ORTHOPEDICS, LLC; BIOMET OF INDIANA; BIOMET, INC.; BIOMET TRAUMA, LLC; BIOMET U.S. RECONSTRUCTION, LLC; BIOMET MANUFACTURING CORP.; AND ZIMMER BIOMET HOLDINGS, INC. ("Defendants"), the following:

**I.**

**INTRODUCTION AND SUMMARY OF ACTIONS**

1.    For several years, Defendants have known that their hip replacement device – the M2A-Magnum Hip Replacement System (hereafter "Device") – is prone to fail years before its expected life of more than fifteen years. They have also known that the implant's metal "ball" and "socket" bearings that make up the hip-joint generate metal debris over time from wear and tear that can spread throughout the patient's surrounding bone and tissue. As a result of these defects, patients that have had the devices implanted have endured, or will endure,

unnecessary pain and suffering; debilitating lack of mobility; inflammation causing damage or death to surrounding tissue and bone; and a subsequent more difficult revision surgery to replace the faulty devices giving rise to more debilitations, a prolonged recovery time, and an increased risk of complications and death from surgery. But rather than immediately recalling the Device upon first receiving notice of complaints made to the FDA of the defects discussed above, Defendants continued to aggressively market the Device, claiming it was a safe and effective hip replacement system. Indeed, Defendants sought to capitalize on the problems with the competitor devices by asserting the superiority of the Device over other metal-on—metal hip implant designs sold by their competitors.

2. Plaintiff's suffering could easily have been prevented. Plaintiff would not have suffered from unnecessary pain and debilitation, and the need to undergo subsequent revision surgery, had Defendants warned the public of the dangers of the Device in 2006-2007 when dozens of complaints began being made to the FDA regarding the device's failures. Or, even better, had Defendants taken the affirmative step of recalling the Device, Plaintiff's suffering could have been alleviated. However, even if Defendants' recalled this device today it would come too late for thousands of Americans, including Plaintiff, who will now live with the consequences of these faulty devices for the rest of their lives. Plaintiff seeks redress for Plaintiff's injuries and associated damages that have been incurred as a result of those injuries.

3. This is a tag along action to the multi-district litigation over Biomet metal-on-metal hip implants which is styled *In Re: Biomet M2a Magnum Hip Implant Products Liability Litigation (MDL 2391)* pending in the United States District Court for the Northern District of Indiana, South Bend Division, Cause No. 3:12-md-2391 before United States District Court Judge Robert L. Miller, Jr.

## II.

## **PARTIES AND JURISDICTION**

4. Plaintiff ERIC BROWNELL is over the age of majority and is a citizen and resident of the County of Hamilton in the State of Iowa. Plaintiff has been injured due to a defective Biomet Magnum Device.

5. At all times relevant, Defendant, BIOMET, INC. was an Indiana Corporation with its principal place of business in Warsaw, Indiana.

6. Defendant BIOMET, INC. designed, manufactured, marketed, promoted, and sold the Device that was implanted into Plaintiff's body and is the subject of this action.

7. At all times relevant, Defendant BIOMET ORTHOPEDICS, LLC was a limited liability company organized and existing under the laws of Indiana with its principal place of business in Warsaw, Indiana. The sole member of BIOMET ORTHOPEDICS, LLC is BIOMET, INC., which is incorporated in Indiana and has its principal place of business in Warsaw, Indiana.

8. Defendant BIOMET ORTHOPEDICS, LLC designed, manufactured, marketed, promoted, and sold the Device that was implanted into Plaintiff's body and is the subject of this action.

9. At all times relevant, Defendant, BIOMET U.S. RECONSTRUCTION, LLC was a limited liability company organized and existing under the laws of Indiana with its principal place of business in Warsaw, Indiana. The sole member of BIOMET U.S. RECONSTRUCTION, LLC is BIOMET, INC., which is incorporated in Indiana and has its principal place of business in Warsaw, Indiana.

10. Defendant BIOMET U.S. RECONSTRUCTION, LLC designed, manufactured, marketed, promoted, and sold the Device that was implanted into Plaintiff's body and is the subject of this action.

11. At all times relevant, Defendant, BIOMET MANUFACTURING, LLC, f/k/a BIOMET MANUFACTURING CORP., was a limited liability company organized and existing under the laws of Indiana with its principal place of business in Warsaw, Indiana. The sole member of BIOMET MANUFACTURING, LLC is BIOMET, INC., which is incorporated in Indiana and has its principal place of business in Warsaw, Indiana.

12. Defendant BIOMET MANUFACTURING, LLC, f/k/a BIOMET MANUFACTURING CORP., designed, manufactured, marketed, promoted, and sold the Device that was implanted into Plaintiff's body and is the subject of this action.

13. At all times relevant, Defendant, ZIMMER BIOMET HOLDINGS, INC., was a limited liability company organized and existing under the laws of Indiana with its principal place of business in Warsaw, Indiana. The sole member of ZIMMER BIOMET HOLDINGS, INC. is BIOMET, INC., which is incorporated in Indiana and has its principal place of business in Warsaw, Indiana.

14. Defendant ZIMMER BIOMET HOLDINGS, INC. designed, manufactured, marketed, promoted, and sold the Device that was implanted into Plaintiff's body and is the subject of this action.

15. Defendants BIOMET, INC.; BIOMET ORTHOPEDICS, LLC; BIOMET U.S. RECONSTRUCTION, LLC; BIOMET MANUFACTURING LLC; and ZIMMER BIOMET HOLDINGS, INC are collectively referred to herein as "Biomet" or Defendants.

16. At all times relevant herein, Defendants were the agents of each other, and in doing the things alleged herein, each Defendant was acting within the course and scope of its agency and was subject to and under the supervision of each and every other Defendant herein.

17. Upon information and belief, at all times herein mentioned, the employees of all Defendants herein, their subsidiaries, affiliates, and other related entities, as well as the employees of Defendants' subsidiaries, affiliates, and other related entities, were the agents, servants and employees of Defendants, and at all relevant times, were acting within the purpose and scope of said agency and employment. Whenever reference in this Complaint is made to any act or transaction of Defendants, such allegations shall be deemed to mean that the principals, officers, employees, agents and/or representatives of Defendants herein committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of Defendants herein while actively engaged in the scope of their duties.

## III.

## JURISDICTION AND VENUE

18. This court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(A) as the parties are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

19. Venue is proper in the Northern District of Iowa pursuant to 28 U.S.C. §139(b)(2) and 1391 (c)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the Northern District of Iowa, and because Defendants are entities who are subject to the personal jurisdiction of Iowa courts with respect to the civil action in question.

20. Because the claims in this case arise from faulty Biomet hip implant, the case should be consolidated with MDL 2391, *In Re: Biomet M2aMagnum Hip Implant Products Liability Litigation,* in the United States District Court, Northern District of Indiana, South Bend Division before the Hon. Robert L. Miller, Jr. Remand would be appropriate to the United States District Court for the Northern District of Iowa.

## IV.

## FACTUAL ALLEGATIONS

**1. DEFENDANTS MANUFACTURED AND MARKETED THE MAGNUM DEVICE TO THE PUBLIC, EVEN THOUGH THEY KNEW OR SHOULD HAVE KNOWN OF THE DANGER THAT THE MAGNUM DEVICE POSED TO THE PUBLIC.**

21. The Device was developed in order to reconstruct human hip joints that are diseased due to conditions such as osteoarthritis, rheumatoid arthritis, vascular necrosis(AVN), or fracture. The hip joint connects the thigh (femur) bone of a patient's leg to the patient's pelvis. The hip joint is like a ball that fits in a socket. The socket portion of the hip is called the acetabulum. The femoral head at the top of the femur bone rotates within the curved surface of the acetabulum.

22. A total hip replacement implant device typically consists of four separate components: a femoral stem, a femoral head (or ball), a liner, and an acetabular shell (socket). Usually these components are made or metal and plastic. The Device has three components: a metal femoral head, a metal taper insert, and a metal acetabulum cup. The metal femoral head can be attached to a femoral stem to complete a total hip replacement. As a result of the use of metal in the ball, taper insert, and socket components, the device is referred to by the industry as

a Metal-on-Metal (MoM) Implant Device. Once implanted, these devices are supposed to last for an average of about fifteen (15) or more years before requiring replacement.

23. Defendants aggressively marketed the Device as having many advantages over other hip replacements or hip resurfacing systems. When initially released, Defendants promoted the device to surgeons as being "designed specifically to address the issue of wear debris" and held it out as the "right choice for use in young, highly active patients." Later, Defendants promoted the device as "offering improved range of motion and joint stability" and employed gymnast Mary Lou Retton to deliver the message in April of 2006 for direct-to-consumer print, TV, and radio advertising. Even as other MoM devices came under scrutiny for their high rates of failure over the years, Defendants continued to falsely advertise the Device as a superior device citing biased and misleading studies and data indicating the hip replacement was subject to reduced wear and revision.

24. Contrary to what Defendants' marketing campaigns suggest, for many years Defendants have known of the risks inherent in MoM devices, including the Biomet Magnum Device, which were causing harm in a high number of patients who received them. Specifically, for more than five years, the FDA has been receiving complaints that the Devices failed early in some patients due to component loosening, dislocation, component wear and fracture, due to the design of the device. In addition, reports were received that the implant's "ball" and "socket" that make up the hip-joint – which are both metal bearings – generate metal debris over time from wear which can spread throughout the surrounding bone and tissue and cause severe inflammation and damage. Indeed, since the start of 2006, the FDA has received hundreds of complaints involving patients in the United States that received the Devices, with a number of these patients requiring complicated, expensive and painful revision surgeries with a prolonged recovery time.

25. Notwithstanding these complaints, Defendants neither halted sales of the Device, nor warned the public. Instead, they continue to aggressively market the Device as safe and effective even though they were on notice of the high number of complaints received by the FDA.

26. However, in May of 2011, the FDA asked Defendants, and other manufacturers, to provide data on metal levels in the blood of patients implanted with their Metal-on-Metal hip implants due to concerns regarding their use. The request follows the release of British studies from March of 2010 showing that MoM implants, such as the Device, are potentially dangerous because they can generate large amounts of metallic debris as they wear over time. Metallic debris have been shown to cause severe inflammatory response in some patients that cause pain in the groin, and death of tissue in the hip joint and loss of surrounding bone, requiring a revision surgery to replace the device before its expected expiration.

27. In a systematic review of the clinical trials, observational studies, and registries conducted by the FDA and published in the British Medical Journal on November 29, 2011, it was found that Metal-on-Metal hip implants are no more effective than traditional polyethylene lined implants, and increase the risk of revision surgery. Therefore, Metal-on-Metal hip implants increase the safety risk to patients without providing any benefit over traditional hip implants. Due to this poor risk-benefit profile, sales of the Biomet Magnum have decreased substantially.

28. As a result of the issues with the Device, Plaintiff has suffered symptoms including pain, swelling, inflammation and damage to surrounding bone and tissue, and partial or complete lack of mobility. As noted above, these symptoms are the result of possible loosening of the implant, where the implant does not stay attached to the bone in the correct position; fracture, where the bone around the implant may have broken; dislocations, where two parts of the implant that move against each other are no longer aligned; or the spread of metal debris from the metal femur head and metal acetabular cup from rubbing and rotating against each other. For these reasons, revision surgeries have been necessary to remove the faulty Devices. However, these revision surgeries present enormous risks to patients because they are technically more difficult than the original implant surgery, the patients is more at risk of complications and death, and the recovery is more prolonged than the original hip replacement surgery.

///

**2. AS A DIRECT AND PROXIMATE RESULT OF DEFENDANTS' FAILURE TO RECALL THE HIP IMPLANT DEVICE, PLAINTIFF RECEIVED A HIP IMPLANT DEVICE, AND NOW HAS SUFFERED DEBILITATING PAIN AND THE NEED FOR A REVISION SURGERY TO REPLACE THE IMPLANT.**

29. During all material times, Plaintiff has been a resident of the State of Iowa.

30. On or about January 20, 2009, Plaintiff underwent a left total hip arthroplasty using the Biomet Magnum M2A system with metal-on-metal replacement performed by Dr. Emile Li, MD at Wright Medical Center, and received the Device.

31. After the surgical implant of the Device, Plaintiff suffered symptoms including but not limited to severe pain, dislocation, metallosis, component loosening, and lack of mobility.

32. Plaintiff additionally suffered or incurred the following personal and economic injuries as a result of the implantation with the Magnum Device:

    a. underwent an additional surgical procedure that would not have been needed if the Magnum Device had performed satisfactorily during its expected usual life;

    b. permanent harm by severe metal poisoning and metallosis from the metal debris of the Magnum Device;

    c. lost wages and future loss of earning capacity;

    d. medical expenses and will incur additional medical expenses in the future; and

    e. permanent harm because of complications normally associated with a second hip replacement.

33. On December 21, 2017, Plaintiff underwent a revision of the left hip total arthroplasty performed by Dr. Emile Li, MD at Wright Medical Center for failure of the total hip arthroplasty causing chronic infections and need for replacement of all components.

///
///
///
///

34. Revision surgeries are generally more complex than the original hip replacement surgery, often because there is a reduced amount of bone in which to place the new hip implants. Revision surgeries also usually take longer than the original hip replacement surgery and the revision surgery has a higher rate of complications including, but not limited to, an increased risk of dislocation.

35. Plaintiff was not aware of the defects in Metal-on Metal hips and particularly his Device.

36. Had Plaintiff or his surgeon known that the Device caused injury, and the potential need for a revision surgery to explant the device, without any benefit over traditional hip implants, then neither Plaintiff nor his surgeon would have chosen the Device for the hip implant surgery. Rather Plaintiff and his surgeon would have opted for the safer and more effective traditional hip implant utilizing a polyethylene liner.

37. As a direct and proximate result of the implantation of Device Plaintiff has suffered significant harm, including but not limited to, physical injury, bodily impairment, debilitating lack of mobility, conscious pain and suffering, and a general diminished quality of life. As a result, Plaintiff has sustained and will continue to sustain damages in an amount to be proven at trial.

## V.

## FIRST CAUSE OF ACTION

### NEGLIGENCE

**(Against all Defendants)**

38. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

39. Defendants had a duty to exercise reasonable care in the design, manufacture, testing, marketing, and distribution into the stream of commerce of the Devices, including a duty to ensure that the Devices did not pose a significantly increased risk of adverse events.

40. Defendants failed to exercise reasonable care in the design, manufacture, testing, marketing, and distribution into the stream of commerce of the Devices. Defendants knew or

9
COMPLAINT
Case 3:19-cv-03048-CJW-KEM   Document 1   Filed 03/20/18   Page 9 of 14

should have known that the Devices could fail early in patients, thereby giving rise to pain and suffering, debilitation, and the need for a revision surgery to replace the device, with the attendant risks of complications and death from such further surgery, and therefore was not safe for use by Plaintiff.

41. Despite the fact that Defendants knew or should have known that the Devices could fail early in patients, thereby giving rise to pain and suffering, debilitation, and the need for a revision surgery to replace the device, with the attendant risks of complications and death from such further surgery, Defendants continued to market the Devices as safe and effective hip replacement systems.

42. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered significant damages, including but not limited to physical injury, economic loss, pain and suffering, and the need for further surgery to replace the faulty device, and will continue to suffer such damages in the future.

43. In taking the actions and omissions that caused these damages, Defendants were guilty of malice, oppression and fraud, and Plaintiff is therefore entitled to recover punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

## STRICT LIABILITY (MANUFACTURING DEFECT)

### (Against all Defendants)

44. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

45. Defendants designed, manufactured, tested, marketed, and distributed into the stream of commerce the Devices.

46. The Device that was surgically implanted in Plaintiff was defective in its manufacture when it left the hands of Defendants in that it deviated from product specifications, posing a serious risk that they could fail early in patients, thereby giving rise to pain and

10
COMPLAINT
Case 3:19-cv-03048-CJW-KEM   Document 1   Filed 03/20/18   Page 10 of 14

suffering, debilitation, and the need for a revision surgery to replace the devise, with the attendant risks of complications and death from such further surgery.

47. As a direct and proximate result of Defendants' placement of the defective Devices into the stream of commerce, Plaintiff has suffered significant damages, including but not limited to physical injury, economic loss, pain and suffering and the need for further surgery to replace the faulty device, and will continue to suffer such damages in the future.

48. In taking the actions and omissions that caused these damages, Defendants were guilty of malice, oppression and fraud, and Plaintiff is therefore entitled to recover punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

### STRICT PRODUCTS LIABILITY (DESIGN DEFECT)

**(Against all Defendants)**

49. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

50. Defendants designed, manufactured, tested, marketed, and distributed into the stream of commerce the Devices.

51. The Device that was surgically implanted in Plaintiff was defective in its manufacture when it left the hands of Defendants in that its design was flawed thereby posing a Serious risk that the device could fail early in patients, thereby giving rise to pain and suffering, debilitation, and the need for a revision surgery to replace the devise, with the attendant risks of complications and death from such further surgery.

52. As a direct and proximate result of Defendants' placement of the defective Devices into the stream of commerce, Plaintiff has suffered significant damages, including but not limited to physical injury, economic loss, pain and suffering and the need for further surgery to replace the faulty device, and will continue to suffer such damages in the future.

///

11
COMPLAINT
Case 3:19-cv-03048-CJW-KEM   Document 1   Filed 03/20/18   Page 11 of 14

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY (INADEQUATE WARNING)

**(Against all Defendants)**

53. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

54. Defendants designed, manufactured, tested, marketed, and distributed into the stream of commerce the Devices.

55. The Devices placed into the stream of commerce by Defendants were defective due to inadequate warning because Defendants knew or should have known that the Devices could fail early in patients, thereby giving rise to pain and suffering, debilitation, and the need for a revision surgery to replace the device, with the attendant risks of complications and death from such further surgery, but failed to give consumers adequate warning of such risks. Further, the Devices placed into the stream of commerce by Defendants were surgically implanted in a manner reasonably anticipated by Defendants.

56. As a direct and proximate result of Defendants' placement of the defective Devices into the stream of commerce, Plaintiff has suffered significant damages, including but not limited to physical injury, economic loss, pain and suffering and the need for further surgery to replace the faulty device, and will continue to suffer such damages in the future.

57. In taking the actions and omissions that caused these damages, Defendants were guilty of malice, oppression and fraud, and Plaintiff is therefore entitled to recover punitive damages.

///
///
///
///

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in the amount to be proven at the time of trial.

## FIFTH CAUSE OF ACTION

### BREACH OF EXPRESS AND IMPLIED WARRANY

### (Against all Defendants)

58. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

59. Defendants designed, manufactured, tested, marketed, and distributed into the stream of commerce the Devices.

60. Defendants expressly and implicitly warranted that the Devices were safe and effective hip replacement systems.

61. The Devices placed into the stream of commerce by Defendants did not conform to these express and implied representations because they failed early, thereby giving rise to pain and suffering, debilitation, and the need for a revision surgery to replace the device, with the attendant risks of complications and death from such further surgery.

62. As a direct and proximate result of Defendants' breach of express and implied warranties regarding the safety and effectiveness of the Devices, Plaintiff has suffered significant damages, including but not limited to physical injury, economic loss, pain and suffering and the need for further surgery to replace the faulty device, and will continue to suffer such damages in the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in the amount to be proven at the time of trial.

## VI.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

A.   Awarding compensatory damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

B.   Awarding economic damages in the form of medical expenses, out of pocket expenses, lost earnings and other economic damages in an amount to be determine at trial of this action;

C.   Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiffs in an amount sufficient to punish Defendants and deter future similar conduct;

D.   Prejudgment interest;

E.   Post-judgment interest;

F.   Awarding Plaintiffs reasonable attorneys' fees when applicable;

G.   Awarding Plaintiffs the costs of these proceedings; and

H.   Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues.

DATED: March 20, 2018                    Respectfully submitted,

**WILSHIRE LAW FIRM**

By:  */s/ Bobby Saadian*

BOBBY SAADIAN, ESQ.
CA # 250377
WILSHIRE LAW FIRM
3055 Wilshire Bvd., 12th Floor
Los Angeles, CA 90010
Telephone: (213)381-9988
Facsimile: (213)381-9989
Attorneys for Plaintiffs